In the Matter of OTTOMAR STANGE et al., Copartners under the Firm Name of STANGE CONSTRUCTION COMPANY, Respondents, against THOMPSON-STARRETT COMPANY, Appellant.

(Argued December 5, 1932; decided January 17, 1933.)

*Nathan L. Miller, J. Arthur Leve* and *Frederick Hulse* for appellant. The arbitrators were limited to a dispute in relation to a clause of the contract. They could not set aside the contract and make the award independently of its provisions on the theory of breach of contract. (*Smith* v. *Thompson-Starrett Co.*, 247 N. Y. 277; *Matter of Bullard* v. *Grace Co.* (240 N. Y. 388; *Matter of Marchant* v. *Mead-Morrison Mfg. Co.*, 252 N. Y. 284; *Dodds* v. *Hakes*, 114 N. Y. 260.)

*John L. Seager* and *F. Earl Walter* for respondents. The arbitrators fully performed their duties; they did not go beyond their jurisdiction and they substantially complied with the order of the Appellate Division. (*Moore* v. *Eadie*, 245 N. Y. 166; *Ice Service Co.* v. *Phipps Estates*, 245 N. Y. 393; *Fuller Co.* v. *Cedar-William St.*

*Corp.*, 135 Misc. Rep. 768.) The authority of the arbitrators was not limited to making only such an award as could be produced by the use of unit prices. They acted within their authority in using the method adopted by them in reaching their award. (*Matter of Smith Co.* v. *Thompson-Starrett Co.*, 247 N. Y. 277; *Itoh & Co.* v. *Boyer Oil Co.*, 198 App. Div. 881; *Fudickar* v. *Guardian Mut. Life Ins. Co.*, 62 N. Y. 392; *Sweet* v. *Morrison,* 116 N. Y. 19; *Everett* v. *Brown,* 120 Misc. Rep. 349; *Moore* v. *Eadie,* 245 N. Y. 166; *Ice Service Co.* v. *Phipps Estate,* 245 N. Y. 393.)

KELLOGG, J. Thompson-Starrett Company contracted with the owner of certain premises for the dismantling of the buildings standing thereupon, and the erection of a department store in their place. It subcontracted with Ottomar Stange and Anna A. Stange, composing the firm of Stange Construction Company, for the performance of a substantial portion of the work. This included all dismantling, all excavating, the building of foundation walls, the laying of all concrete below the under side of the first floor level, and various other items. The contract provided: " The sum to be paid by Contractor to Sub-Contractor for the work shall be Four Hundred Thirty-two Thousand and No /100 dollars ($432,000.00), subject to additions and deductions as herein provided, which sum is herein referred to as the Price."

The contract made provision that the contractor should have the right, as construction proceeded, to direct any changes in the work to be made, which it might deem expedient, whether these changes increased or diminished the work. However, no such changes should be made " except upon written order of contractor signed by an executive officer, stating the additional time allowed, if any, and the amount to be added or deducted from the Price." The following clause was to govern in case of changes: " Unit prices, if any are named in this contract, shall be used in determining the value of such changes."

There followed this clause: " In case of disagreement as to the adjustment of the Price or of the time of completion Sub-Contractor shall proceed with the work and the determination of such amount or time shall be referred to arbitration as herein provided."

During the progress of the work some fifty changes were ordered made, and the cost of the work was greatly increased. The parties were unable to agree that the prices stated in the orders for the changes fairly expressed the additional cost. Consequently, the subcontractor, as provided in the contract, proceeded with the work, awaiting a subsequent determination by arbitration of increased costs. After completion, pursuant to an order of Special Term, modified by an order of the Appellate Division, arbitrators were appointed who took up the work assigned to them. An award was finally made in favor of the subcontractor against the contractor in the sum of $234,702.12, with interest. The contractor moved to set aside the award; the subcontractor moved to confirm the award. The award was confirmed, and judgment has followed for the amount of the award.

The contract does in fact contain a provision naming unit prices. The schedule therein given is preceded by the following clause: " It is hereby understood and agreed that should any changes be made in the work as herein contemplated, the " Price " mentioned in article III shall be increased or decreased, as the case may be, by the amount of work added or omitted, multiplied by the following unit prices." Then follow twenty-eight items, describing work to be done or materials to be furnished, and the agreed sum per unit to be paid therefor. Thus excavating by steam shovel is priced at $0.95 per cubic yard place measurement; hand excavating, for general purposes, is priced at $2.25 per cubic yard; for piers, pits and trenches at $2.45; for underpinning at $3.25. These prices are to prevail whether the additional excavation is done at a high or a low level, whether the

material excavated is sand, hard pan or rock. All concrete work is to be done for named prices " per cubic yard, in place," various types of work commanding greater or less prices. Thus concrete " in place," whether laid in the wet or in the dry, no matter what difficulties might attend the laying, is to be paid for at a set and invariable figure, named for a particular type of work.

It was evidently the concept of the parties that all subcontracting work, whether done in precise accord with the work originally specified and planned, or whether done in accord with altered plans, increasing or diminishing the work, should constitute an integral part of the subject-matter of the express contract, to be governed by its terms, and to be paid for at contract prices. "All clauses of this Contract shall apply to any changes, omissions, or extra work in like manner and to the same extent as to the work contracted for, and no changes, omissions, or extra work shall annul or invalidate this contract." With this thought in mind the parties made provision for arbitration as follows: " In case the parties hereto disagree in relation to any clause in this contract, the question shall be referred to a Board of Arbitration consisting of three (3) disinterested parties, one nominated by Contractor, one by Sub-contractor, these two to select a third." We have construed this particular clause to signify that disputes " not being referable to ' any clause of this contract,' were not made arbitrable by the parties." (*Matter of Smith Fireproof Constr. Co.* v. *Thompson-Starrett Co.*, 247 N. Y. 277, 279.) Specifically, the contract provided, in reference to alterations of the contract work, as we have already noted: " In case of disagreement as to the adjustment of the Price or of the time of completion Sub-contractor shall proceed with the work and the determination of such amount or time shall be referred to arbitration as herein provided."

The controversy to be arbitrated must be " in relation to any clause in this contract." Obviously a claim made

for the reasonable value of the work done, on the theory that the contract has been abandoned and no longer governs, cannot constitute an issue under " any clause in this contract." Again, the disagreement, so far as it relates to alteration, in order to be arbitrable, must be one involving " the adjustment of the Price." If the contract is to be regarded as abandoned, and a recovery to be had upon a *quantum meruit*, no " adjustment " of the contract " Price " can be involved, for to allow such a recovery would be, not to modify the price, but to scrap it utterly. Self-evidently, if a contract does not apply to control a price, it does not apply to compel an arbitration of the price. The respondents would, therefore, appear to be in this inescapable dilemma: If the award made by the arbitrators is a recovery, based solely upon the reasonable value of the work done, regardless of the price, they had no authority to make it, since only contract disagreements were arbitrable. On the other hand, if the award is intended as a recovery based upon liability under the contract, it may not stand, since it involves a repudiation of every contract term, in relation to the adjustment of the price.

That the subcontractors, the petitioners herein, regarded the contract as having been utterly abandoned by the parties, and, therefore, wholly inapplicable to determine their claim, is clearly apparent. They presented a claim in *quantum meruit* for the recovery of the actual cost to them of all work done and materials furnished, plus a percentage for profit. They asked the arbitrators " to determine that this entire contract as so affected, could not be done in accordance with the original contract plans, specifications, lump sum and unit prices in contract for additions and omissions and beg of the arbitrators to award it, the Stange Company, its full costs of the entire work, plus 10% profit, plus interest on defaulted payments to date, after allowing credit for cash payments made to date." Said the counsel, in presenting

the claim: " Certainly it will possibly be ' scrapping the contract.' " Granted the validity of the argument that the extent of the changes involved a " scrapping " of the express contract, then the remedy available lay not in arbitration, under a clause of a " scrapped contract," but in a suit at law.

That the majority of the arbitrators, who made the award, agreed with the petitioners, is shown by the statements made by one of them. Thus Mr. Mueser said: " The question to my mind is whether at the time when the parties made their contract, there was a meeting of the minds that the respondent (contractor) should have the right under the Change Clause to completely emasculate the contract leaving nothing but a shell." In his judgment, " It would be unfair, utterly without justice, if not fraudulent, to use the shell of an emasculated lump sum contract under the guise of a Change Clause to have the petitioner do work which in no sense he had intended to do, had not bid for and might be unfitted for or unorganized to do." Finally, the arbitrator stated that the changes were of such character " that they were beyond the intent of the change clause and in fact defeated the intent of the lump sum provision."

The action of the arbitrators speaks even louder than the words used by them or the petitioners. Concededly, they made the award of $234,702.12 by no other method than the following: They found that the petitioning subcontractor had expended for the entire work done the sum of $911,784.28; that the total payments made to it by the contractor aggregated $677,082.16. Deducting the latter from the former leaves $234,702.12, and for that sum the award was made. True, these facts do not appear in the award itself. That document is artfully drawn, so that it appears therefrom that the arbitrators, having first found, on the evidence given, that the increased cost, due to the changes in the work, was $479,784.28, added that sum to the contract price of

$432,000 to make a total cost of $911,784.28, from which the deduction of $677,082.16 for payments made left a balance due of $234,702.12, the amount awarded. The fact is, however, as all the proof incontestably shows, that the figure $479,784.28 was not a factor employed to produce the figure of $911,784.28, representing total cost; on the contrary, that it was itself the product of that figure, obtained by subtracting the contract price from the figure of total cost. Concededly, no effort was made and no decision given, to determine increased cost, over contract price, as an independent item. The only proof given related to the actual expenditures of the sub-contractors paid out in producing the entire work called for by the contract, as altered by the contractor in the exercise of its contract privilege.

In employing the figure produced by this proof as the sole basis of the recovery, the arbitrators arrived at a result which is clearly unwarranted. Their repudiation of the contract did not involve alone the contract terms providing for the use of unit prices to determine the cost of changes made; it involved a complete " scrapping " of the contract price. Thus, every advantage which the contractor may have secured to itself by the express contract has been swept away. Suppose, for instance, that the price of $432,000 for the original work covered material and labor to be furnished, the actual cost of which to the subcontractors would have been $632,000. Even if the arbitrators were entitled to disregard unit prices and go to total cost for the solution of their problem, the deduction from total cost, in order to determine additional cost, should have been, not $432,000, but $632,000. Not even a pretense is made that proof was given or a decision made to determine what would have been the actual cost of the original contract work. Mr. Mueser says: " It is, indeed, true that in the endeavor to write the form of the award in full compliance with the order and the above contract requirement, the Chairman

deducted the sum of $432,000, *being the Price,* from the sum of $911,784.28, in order to find the figure of $479,784.28, *being the adjustment* of the Price." Counsel for the subcontractors on this appeal themselves say: " The majority arbitrators took and used the lump sum contract price of $432,000 for this purpose." It thus appears that, had there been any advantage to the contractor in securing the named lump sum price, the award completely robbed it of the contract gain. Indeed, it conclusively appears that the contract has in all respects been wholly disregarded; that had there been no express contract between the parties, but merely a performance of the work by subcontractors at the request of contractor, under an implied promise by the latter to pay the reasonable value of the work, the result would have been the same. It is obvious that there was here no arbitration of a disagreement " in relation to any clause in this contract; " that there was none as to any disagreement " as to the adjustment of the Price; " that the arbitrators have not made any " adjustment of the Price " but have ignored it utterly.

The suggestion that the order of the Appellate Division modifying the Special Term order appointing the arbitrators is a final order which conclusively determines the authority vested in the arbitrators is entirely correct. However, the power to make the order was derived from the express contract between the parties and the order must itself be interpreted by the terms of that contract. The order contains no term providing for an arbitration other than that authorized by the contract. It provides that the arbitrators shall determine the " increased costs and expenses of the said petitioners in any wise due to changes directed." As there has been no comparison between the original and the altered plans, no estimate of the excess cost of executing the latter over and above the cost of executing the former, with due consideration given to the advantages, if any, afforded by the Price, there has

been no determination of " increased costs and expenses."
Again, the order contains no authorization that in esti-
mating increased cost, unit prices should be ignored.
Contract provisions in respect to arbitration should have
governed but have been ignored. The order contained
no provision authorizing the arbitrators to determine total
cost to the subcontractor of the improvement as altered,
and to deduct total payments made, in order to determine
the balance due, which was the method pursued by the
arbitrators. On the contrary, the order provided that
the arbitrators should proceed to determine in detail the
increased cost involved in changes ` relating to " the
elevation of column footings in the sub-basement,"
relating to changes " in the sub-basement on the north
side of the said building," relating to changes " in the sub-
basement for the entire length of the building along
Ninth Street," in " changing the structure at this point
from a one story basement to a two story basement,"
in requiring additional steel piling and timber bracing,
and in changes in respect to numberless other items. So
far as we are informed, the changes specified in the order
for arbitration may have covered all the items of change
directed by the fifty change orders. However, in order
that no item should fail of coverage by the order, the court
made a general provision that the arbitrators should
determine " increased costs and expenses " due " to any
and all other changes and alterations in construction
directed and ordered." Here is clear demonstration that
the court intended that the arbitration should proceed,
not by the method of total cost less payments made,
but item by item to determine the increased cost of every
change, applying unit prices as the measure of increased
expense in every instance. True, the order, in respect
to all the changes specified, speaks of them as alterations
" requiring the petitioners to perform each and all of the
said work as changed and altered, in a different manner
and under different conditions from those in said contract

and said drawings annexed thereto." Observe that the " manner and conditions " referred to are those which are different " from those in said contract and said drawings; " not those which might be found in things external to the two sets of plans, the original and the altered. We find here no authorization of an abandonment of unit prices prescribed for use in every case of an alteration; no sanction for the total repudiation of the contract price rather than its adjustment.

The judgment should be reversed, with costs in all courts, the order confirming the award reversed, and the motion to vacate the award granted.

POUND, Ch. J., CRANE, LEHMAN and O'BRIEN, JJ., concur; HUBBS and CROUCH, JJ., dissent and vote to affirm.

Judgment accordingly.