Scovill Local 1604, UAW-CIO v.
Scovill Manufacturing Company

Superior Court    New Haven County    File No. 19559
at Waterbury

Memorandum filed November 8, 1951.

*Margaret Connors Driscoll,* of Bridgeport, for the Plaintiff.

*Mark L. Sperry,* 2nd and *H. Heminway Merriman,* of Waterbury, for the Defendant.

KING, J. The plaintiff is a labor union which is the collective bargaining agent in the defendant's plant.

The parties entered into a fifty-seven-page labor agreement "Exhibit A" effective as of October 5, 1950. Article X, on page 16, provides that (paragraph 1) : "a grievance involving interpretation of or application of provisions of this Agreement . . . may be taken to arbitration by either [party]"; (paragraph 2) "arbitration will be for the sole purpose of interpreting or applying the specific provision or provisions of this Agreement involved in the grievance"; (paragraph 11) "the arbitrator shall have no power to make an award which amends, adds to, or eliminates from any paragraph of this Agreement, nor can he presume or infer that Article IV—Management Functions, is subordinate to any other Article of this Agreement, except as is provided by the terms of the Management Functions Article itself"; (paragraph 14) "the award shall be based upon the facts presented. It shall not be rendered to compromise the issue or issues"; and (paragraph 15) "In deciding any issue the arbitrator will be guided by the applicable terms of this Agreement, if any, and if no terms hereof apply, then by the customs or techniques established by the company. The union [plaintiff] has the right, however, to present evidence which the arbitrator will consider on any unsound Labor Relations practices."

The plaintiff submitted for arbitration the following question:

"Subject to and under the provisions of the Agreement (Exhibit A) . . . , the Arbitrator will determine whether the hourly rate and labor grade of Joseph Begnal is correct; and, if not, what adjustment in his labor grade and hourly rate should be made?"

It is important to note that the plaintiff's trial brief claims (pp. 1 and 3) only that this question involves the interpretation and application of paragraph 7 of Article XIII (p. 23), which provides, subject to certain stated exceptions, for equal pay for equal work. The plaintiff makes no claim that the arbitrator is to alter Begnal's labor grade except if, and to the extent that, the arbitrator believes it necessary so to do in order to make an award giving Begnal the rate of pay to which he is entitled under the terms of paragraph 7 of Article XIII. This is not clear from the question, as stated, and it is unfortunate that paragraph 7 of Article XIII was not specifically referred to in the question proposed. Indeed, as submitted, it appears that the question would authorize a determination of Begnal's labor grade quite apart from consideration of his rights under paragraph 7 of Article XIII. So construed, it would not involve a specific provision or provisions of Exhibit A, and could not be held to be an arbitrable question. However, as stated by the parties in this court, the question directly involves only paragraph 7 of Article XIII, and rather than remand the matter for clarification, the court will treat the application as treated by the parties, ignoring technicalities. *Anselmo* v. *Cox,* 135 Conn. 78, 79. So considered, the question to be arbitrated is whether Begnal's pay is in conformity with the provisions of paragraph 7 of Article XIII.

The defendant employer claimed the question was not arbitrable because not within the terms of the agreement to arbitrate (Article X of Exhibit A), while the plaintiff claimed that it was. In accordance with the procedure outlined in paragraph 8 of Article X, the arbitrator determined the question of arbitrability in the first instance, submitting the written opinion (Exhibit B) attached to the application. As appears from his opinion, he held the question arbitrable. The court is now called upon to determine this question of arbitrability by an application on the part of the arbitrator joined in by the parties. This procedure was authorized in the agreement of submission (para-

graph 9 of Article X) as to this particular question of arbitrability in substantially the same way as it might have been (but was not) authorized as to any other question of law under § 8158 of the General Statutes.

The binding effect of an agreement to submit a question to arbitration stems solely from the contractual agreement of the parties in which they waive their right to have a stated dispute determined in a court and agree to submit it to arbitration. It necessarily follows that the agreement of submission is the measure of the power of the arbitrator. Thus the power granted the arbitrator under the agreement of submission is, and inevitably always must be, a question involving the law of contracts, ultimately determinable only by the court. *Colt's Industrial Union* v. *Colt's Mfg. Co.,* 137 Conn. 305, 307.

The arbitrability of the grievance in question depends upon the proper construction of the agreement of submission which is found in those paragraphs of Article X previously quoted.

The intention of the parties expressed in the agreement of submission controls. It is immaterial what intention (if any) may have actually existed in their minds, since this is not a suit involving reformation of a contract. This expressed intention, with which we are alone concerned, is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. *Ives* v. *Willimantic,* 121 Conn. 408, 411. Here no evidence whatsoever as to the surrounding circumstances was presented by either party.

Obviously the question as limited to Begnal's right to equal pay for equal work under paragraph 7 of Article XIII is a grievance. It is a dispute involving wages under paragraph 1 of Article IX.

It remains to determine whether it is "a grievance involving the interpretation of or application of specific provisions" of Exhibit A within the meaning of paragraphs 1 and 2 of Article X. If it is, it is arbitrable. If it is not, it is not arbitrable.

The defendant concedes on page 5 of its original trial brief (No. 8 in file) that "if two men were doing equal work an arbitrator could under the agreement award equal pay." But it claims that this does not extend to tampering with labor grades listed in Appendix II on page 56 of Exhibit A which implements, inter alia, paragraph 19 of Article XIII on page 26. This

is because, as stated on page 6 of the plaintiff's original trial brief, "the arbitrator assumed jurisdiction over a matter which is not arbitrable since there is no provision in . . . (Exhibit A) which he can 'interpret or apply' with respect to the subject matter [labor grades] the union seeks to have arbitrated."

The court is concerned only with the arbitrability of the question as the parties claim it to be. If this question is arbitrable, the court has no present concern with any possible action of the arbitrator in excess of his powers, whether forecast by his opinion or otherwise. Such action certainly cannot be presumed. Neither is the court concerned with any claims which the plaintiff may have made before the arbitrator, claims which his opinion indicates may have been broader than those the plaintiff has made here.

The actual question as to whether Begnal's pay is in conformity with the defendant's undertaking in paragraph 7 of Article XIII is clearly arbitrable. And this is the only question to be arbitrated, according to the claims of the parties. It involves the foregoing specific provision of the contract (Exhibit A) and not a general dispute arising under the contract. *Matter of Smith Fireproof Construction Co.* v. *Thompson-Starrett Co.,* 247 N. Y. 277, 279; *Matter of Stange* v. *Thompson-Starrett Co.,* 261 N. Y. 37, 41.

The arbitrator's opinion indicates that he feels, inter alia, that if under no circumstances can he change Begnal's labor grade his power to award an increase in pay to Begnal for work equal to that of another employee is limited to such increase as does not exceed the maximum in Begnal's present labor grade as set forth in Appendix II on page 56. To go a step farther, if Begnal is already receiving the maximum pay within his labor grade, then the arbitrator feels that he could award no increase at all regardless of the amount or character of work done. This obviously would restrict and, pro tanto, nullify, the very provision under which Begnal is claiming an increase. It is for this reason, alone, that the question of Begnal's labor grade is involved at all, and here it is involved only incidentally to the actual question of the interpretation and application to Begnal of the provisions of paragraph 7 of Article XIII.

As pointed out by the arbitrator, if the defendant's labor grades, as to Begnal, are not inconsistent with paragraph 7 of Article XIII, there would be no occasion for changing them

It is the court's opinion that this much, at least, of the arbitrator's view has considerable merit, even as matter of law, as an application of the familiar rule that in construing any part of a contract, the entire instrument must be considered and effect given, if reasonably possible, to each part. Under this view the undertaking in paragraph 7 of Article XIII is not indirectly limited by Appendix II, which would be the necessary result of the defendant's claim that under no circumstances can Begnal's labor grade be changed. *Perkins* v. *Eagle Lock Co.*, 118 Conn. 658, 663.

But it is unnecessary to determine whether the arbitrator's views, to the extent hereinbefore set forth, are or are not in conformity with strict rules of law, since as hereinafter pointed out the agreement of submission placed no such limits on his powers.

If the agreement of submission limits an arbitrator to a determination of the "application" of the agreement to a given situation he has no power of "interpretation" of the agreement. *Colt's Industrial Union* v. *Colt's Mfg. Co.*, 137 Conn. 305, 307. But where, as here, he is expressly given power to "interpret" a provision or provisions of the agreement, then he, of course, is under a duty so to do insofar as necessary to carry out his duties under the terms of the agreement of submission. This includes the decision of such questions of interpretation (i. e., construction) as would have been questions of law under normal court procedure. Ibid. Moreover, arbitrators are not bound to follow strict rules of law unless it is a condition of the agreement of submission. *Liggett* v. *Torrington Building Co.*, 114 Conn. 425, 432. Here not only is there no such condition in the agreement of submission, but it is obvious, for at least three independent reasons, that the contrary was the clear intention of the parties.

In the first place, as previously pointed out, the power of interpretation is expressly conferred in paragraphs 1 and 2 of Article X. This really disposes of the matter.

Secondly, it was conceded that but one (Horwitz) of the three persons named as arbitrators in paragraph 4 of Article X is even a member of any bar, although it is provided that the three are to serve in rotation as questions to be arbitrated arise. It is impossible to reconcile the naming of persons with little or no legal training as arbitrators with the claim that they were to

follow strict rules of law. If the agreement of submission purported to make such a provision, it would almost certainly indicate fraud or mistake on the part of those responsible for the insertion of a clause which would almost inevitably make the arbitration provision self-destructive. *Back* v. *Peoples National Fire Ins. Co.*, 97 Conn. 336, 341.

A third compelling reason why the power to interpret the contract without regard to strict rules of law was obviously conferred is disclosed by paragraph 9 of Article X, the very paragraph under which the pending application to this court was made. This provides for the application to the court for a decision (not as does General Statutes, § 8158, on any legal question arising in the course of the arbitration) but in the one instance of a dispute as to the arbitrability of a grievance. As previously pointed out, the question of the power given an arbitrator (necessarily including that of the arbitrability of a given dispute) depends solely upon the construction of the agreement of submission (which is a contract) and, consequently, is and always must be a question of law for the court. The conclusion that it was known and intended that the interpretation of other provisions of Exhibit A was to be made without regard to strict rules of law is inescapable from the very fact that the agreement for submission to court review of a legal question under § 8158 is limited to the one question which was, and always must be, a question of law.

The parties having agreed that a lay arbitrator may interpret and apply specific provisions of Exhibit A to Begnal (admittedly an employee of the defendant and a member of the plaintiff union) and having asked the arbitrator so to do with respect to paragraph 7 of Article XIII, no reason appears why he may not do so. And as previously pointed out, there is no warrant whatsoever for demanding that he attempt a strictly legal interpretation of the contract, assuming, without deciding, that the possible award changing Begnal's labor grade will materialize and, if it does, will be a legally erroneous interpretation of Exhibit A.

The defendant seems to claim that paragraph 11 of Article X precludes the right to interpret Exhibit A, in denying the arbitrator "power to make an award which amends, adds to, or eliminates from any paragraph of the Agreement." This clause cannot, of course, operate to defeat the power of interpretation already given in paragraphs 1 and 2, nor can it, for the reasons

hereinbefore set forth, be construed to require that power to be confined within strict rules of law. It means exactly what it says, and since it is a part of the agreement of submission, it is of course binding on the arbitrator.

It is true that an arbitrator, even when not obliged to follow strict rules of law, is not wholly free from restraint. It is difficult to frame, in general terms, a definition of what action by him will be so far contrary to law as to require judicial interference and vitiate an award. The cases on the matter are legion. A good collection of those arising up until 1938 may be found in annotation, 112 A. L. R. 873, 875. Others may be found in note, 63 Harvard L. R. 681 et seq. At least it may be safely said that if the arbitrator acts reasonably and in accordance with the principles of equity and good conscience, the mere fact that he does not correctly decide a question of law is immaterial; while if he distorts the basic provisions of a contract or so construes it as to condone a violation of criminal law his award cannot stand even though he was not required to follow strict rules of law. *Matter of Western Union Tel. Co. v. American Communications Assn.*, 299 N. Y. 177, 186.

Here the court is unable to find that this lay arbitrator has not the power to determine the actual question before him to the extent hereinafter set forth, within the principles of reason, equity and good conscience.

For the foregoing reasons the court, pursuant to the provisions of § 8158 of the General Statutes, decides that the question hereinbefore quoted is arbitrable to the extent that the arbitrator may determine whether Begnal is obtaining the hourly rate of pay to which he is entitled under paragraph 7 of Article XIII of Exhibit A, including the right in the arbitrator to change Begnal's labor grade if, and to the extent that, the arbitrator reasonably determines that such change is necessary, under the pay limitations set forth in Appendix II, in order to make the foregoing determination as to Begnal's rate of pay under paragraph 7 of Article XIII.