JOHNSON, DRAKE & PIPER, INC., Appellant, v. NEW YORK STATE THRUWAY AUTHORITY, Respondent. (Claim No. 33264.)

Fourth Department, January 7, 1965.

*Nevius, Jarvis & Pilz* (*Carl E. Buckley* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General* (*Dunton F. Tynan* and *Paxton Blair* of counsel), for respondent.

GOLDMAN, J. Claimant appeals from that part of a judgment of the Court of Claims dismissing upon the merits three causes of action for breach of contract by the New York State Thruway Authority in connection with the construction of a portion of the Thruway. Damages were awarded upon three other elements of the claim, from which the State does not appeal. This appeal is concerned only with the three causes of action which were dismissed.

After claimant was awarded the contract it subcontracted the earthwork and excavation to A. L. Dougherty Company. The latter has no contract with the Authority and seeks recovery through the claimant, which demands (1) damages in the amount of $114,530.33 for increased operational costs of excavation as the result of working with an unanticipated vein of sand whose presence was not discovered until excavation had commenced; (2) damages in the amount of $14,242.04 for rehandling of gravel stock-piled so that the contractor might reach the underlying sand for immediate use in the embankment; (3) damages in the amount of $28,187.50 for increased costs of handling 25,000 cubic yards of material and flattening the slope after the south lane of the pavement of the Thruway had already been constructed, the necessity for which work claimant attributes to the Authority's miscalculation of the amount of available gravel.

The controversy arises because of alleged unexpected difficulty encountered in the excavation of the "big cut", from which a substantial portion of the material necessary for the project was to be obtained. The materials were classified as follows: (1) 2B—embankment—for bringing low areas up to grade; (2) 39RYS—immediately under the pavement; (3) 259GS and 259LS—shoulder material; (4) 119S—backfill of trenches for pipes in the embankment. The latter four items were essentially gravel. The nexus of the claims is that there was misrepresentation by the Authority as to the existence on the site of sufficient materials for the performance of the work.

The claimant's bid apparently assumed that all or a substantial portion of the "big cut" was gravel. Accordingly, a comparatively inexpensive loader operation was contemplated whereby the loader would work in long ovals, traveling from the outside of the cut area the whole length thereof toward the center. During the excavation, a layer of sand was encountered necessitating a different method of excavation so that gravel and sand did not become mixed. The increased cost of operation incurred by the presence of the sand is the basis of the claimant's first cause of action.

Claimant relies particularly on the following language in the contract: "The quantity of excavation is sufficient to include those quantities required for embankment, foundation course, shoulders and trench backfill." The contract then refers to "the excavation through the gravel deposit". On its face and standing alone, such language might be interpreted as an assurance of sufficient quantity of material in the gravel deposit but it necessitates a strained construction to spell out a warranty that the gravel deposit contained no other material. Further-

more, this language must be read in conjunction with other portions of the contract and when so read it is clear that there was no representation upon which claimant was entitled to rely. In Special Note No. 7, the contract stated that should the quantity of acceptable material required exceed that available, necessitating the use of an off-the-job source, the contractor would be paid for any additional foundation course material under Item 39RYS. The Authority thus projected the possibility that the need might exceed the available quantity. Accordingly, there was no warranty that requirements would be exclusively satisfied from the '' big cut ''. The '' Earthwork Table '' which the claimant urges is a guarantee was merely an estimate. A reading of the '' Special Notes '' should have alerted a bidder to the fact that the '' big cut '' may not have consisted entirely of gravel. There is nothing in the record to demonstrate that the State represented that the area was free of sand or did anything which excused claimant from satisfying itself by its own investigation as to the actual composition of the material.

The bidder was adequately warned that the information to be obtained in connection with the site and its environment and the conditions affecting the work were to be secured by personal investigation and research and that there was to be no exclusive reliance on estimates or records of the State or the Authority. The contractor was informed that there were records of subsurface explorations available for review by interested parties, but it did not look at them. It made no inquiry about possibility of the presence of sand and did not examine the State's borings of the area although they were available. The claimant's representatives did not see what they should have seen and made little or no effort to take advantage of the State's data about the site. Their entire investigation was casual, cursory and inadequate. The trial court properly determined that the contractor's investigation was not conducted with reasonable care for if it had been it would have been obvious that there was sand on the bottom of the face, gravel and sand mixture in the middle of the face and gravel on top of the open face. '' The claimant saw fit to make its bid without resort to these common and simple safeguards. It may not now secure from the court an alteration of its contract as a substitute for the care and prudence with which the business man of average caution would exercise in serious undertakings.'' (*Niewenhous Co.* v. *State of New York,* 248 App. Div. 658, 659.)

There is no proof that the Authority acted in bad faith by concealing what it was bound to disclose. Where there is no bad faith, concealment or misrepresentation, no liability arises

for loss resulting from a difference between estimated quantities and those actually found (*Manstin Eng. Corp.* v. *State of New York*, 288 N. Y. 657; *Weston* v. *State of New York*, 262 N. Y. 46; *Foundation Co.* v. *State of New York*, 233 N. Y. 177, 186; *De Lia & Sons Constr. Corp.* v. *State of New York*, 1 A D 2d 732).

As for the second cause of action concerning the stock-piling of gravel, the company removed and stock-piled it from the "big cut" in September of 1953 although no order for stock-piling had been given by the engineer pursuant to the contract, and, in fact, all written and verbal requests for stock-piling had been denied. There is evidence to support the finding of the Court of Claims that stock-piling was unnecessary. It is undisputed that 6,000 cubic yards of sand were uncovered as a result of the stock-piling but that this was not used for several weeks. Furthermore, immediately prior to stock-piling, borrow had become available and was ultimately used to the extent of over 67,000 cubic yards. There was no necessity for stock-piling and, accordingly, this claim was properly dismissed.

The third cause of action develops from the fact that after the pavement and ditch had been constructed in the "big cut", it was necessary to obtain more gravel for shoulder material. The contractor was given permission to obtain the gravel by cutting back the slopes behind the ditch line. Such an operation was not originally planned and the contractor was forced to use a more expensive operation to obtain the gravel than was originally anticipated and not contemplated by the contract. The claimant should be compensated for this extra work on a *quantum meruit* basis (*Foundation Co.* v. *State of New York, supra*; *Matter of Stange* v. *Thompson-Starrett Co.*, 261 N. Y. 37). The Court of Claims found that the actual cost in cutting the slopes was $1.377 per cubic yard and that the State has been benefited to that extent without any consideration for 10% profit, or a total cubic yard cost of $1.515 for 25,000 cubic yards. The claimant has already received $.74 per cubic yard and is accordingly entitled to a balance of $.775 per cubic yard, or a total of $19,375. The claimant should, therefore, have judgment for this sum, plus interest, in addition to the judgment granted claimant from which the State did not appeal.

WILLIAMS, P. J., HENRY, NOONAN and DEL VECCHIO, JJ., concur.

Judgment unanimously modified on the law and facts in accordance with the opinion and as modified affirmed, with costs to claimant. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.